## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE UNDER POOLING AND SERVICING AGREEMENT DATED AS OF NOVEMBER 1, 2005 MASTR ASSET-BACKED SECURITIES TRUST 2005-FRE1 MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2005-FRE1, | ) ) ) ) ) ) ) ) ) | Civil Action No. 22-cv-00312-LKG  March 9, 2023 |
| Plaintiff, | ) ) |  |
| v. | ) ) |  |
| RENE MITCHELL, | ) ) |  |
| Defendant. | ) ) |  |

## MEMORANDUM OPINION AND ORDER

### I.    INTRODUCTION

In this civil action, Plaintiff, U.S. Bank National Association, as trustee ("USB"), brings claims for reformation of a deed of trust, declaratory judgment, specific performance, declaration of equitable lien, unjust enrichment and equitable subrogation against Defendant, Renee Mitchell, in connection with a mortgage loan that Defendant used to purchase her residential property. ECF No. 1. Defendant has moved to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(6). ECF Nos. 6 and 6-1. The motion is fully briefed. ECF Nos. 9 and 15. No hearing is required to resolve the motion. *See* Local Rule 105.6 (D. Md. 2021). For the reasons set forth below, the Court **GRANTS-in-PART** and **DENIES-in-PART** Defendant's motion to dismiss and **DISMISSES** Counts I, II, III, V and VI of the complaint.

1

II.   **FACTUAL AND PROCEDURAL BACKGROUND**[1]

A.   **Factual Background**

This case involves the most recent litigation between the parties in a long-standing dispute about the mortgage loan that Ms. Mitchell obtained to purchase her residential property in 2005.  In this case, Plaintiff, USB, seeks to reform and enforce a deed of trust that it contends Ms. Mitchell signed in connection with the purchase of her residential property located in Bowie, Maryland.  ECF No. 1.  Specifically, USB asserts the following claims in the complaint: reformation (Count I); declaratory judgment (Count II); (3) declaration of equitable lien (Count III); (4) specific performance (Count IV); (5) unjust enrichment (Count V); and (6) equitable subrogation (Count VI).  *Id*.

<u>The Property</u>

As background, Ms. Mitchell purchased her residence located at 9003 Harness Way, Bowie, Maryland in 2005 (the "Property").  ECF No. 1 at ¶ 7.  Ms. Mitchell signed a written sales contract for the purchase of the Property on or about June 8, 2005.  *Id*.

The sales contract indicated that the purchase price would be financed by a 30-year fixed rate mortgage loan on a first trust in the amount of $444,728, and also by a 30-year fixed rate loan on a second trust in the amount of $111,172.  ECF No. 6-1 at 10.  Ms. Mitchell also submitted a residential loan application through a mortgage broker to Fremont Investment & Loan ("Fremont"), USB's predecessor-in-interest, requesting a conventional thirty-year purchase money mortgage in the original principal amount of $444,728.00, at a fixed interest rate of 6.2%, which was to be secured by a first-priority lien on the Property.  ECF No. 1-1.

On July 11, 2005, Ms. Mitchell purchased the Property for $555,900.00.  ECF No. 1 at ¶ 9.  The purchase price for the Property was funded by two purchase money loans from Fremont. *Id.*

Relevant to this dispute, Ms. Mitchell received a first purchase money mortgage loan from Fremont in the amount of $444,728.00 (the "Loan") on or about July 11, 2005, which she used to finance the purchase of the Property.  *Id.* at ¶ 11.  Ms. Mitchell signed a note (the

---

[1] The facts recited in this Memorandum Opinion and Order are taken from the complaint, Defendant's motion to dismiss, and the memorandum in support thereof.  ECF Nos. 1, 6 and 6-1.

"Freemont Note") and deed of trust (the "Freemont Deed of Trust") related to the Loan. *Id.* at ¶¶ 11-12; ECF Nos. 1-1, 1-2.

Fremont owned and serviced the Loan until the end of 2005, when the Loan was securitized pursuant to a pooling and servicing agreement into a Trust. ECF No. 1 at ¶ 16. Plaintiff, USB, as trustee, has been the holder of the Freemont Deed of Trust since 2013. ECF No. 1-4

The servicing rights for the Loan were transferred on several occasions. On or around December 1, 2005, servicing rights to the Loan were transferred from Fremont to HomEq Servicing Corporation ("HomEq"). ECF No. 1 at ¶ 18. On or around August 31, 2010, servicing rights to the Loan were transferred from HomEq to Ocwen Loan Servicing, LLC ("Ocwen"). *Id.* at ¶ 19. In 2019, Ocwen and PHH MC merged with PHH MC as the surviving entity and servicer of the Loan as successor by merger to Ocwen. *Id.*

Ms. Mitchell made payments on the Loan until 2013. *Id.* at ¶ 20. But, thereafter, she defaulted on and reinstated the Loan at various times, with the last default occurring on January 2, 2013. *Id.* at ¶ 22.

Ms. Mitchell maintains that, on September 3, 2010, Ocwen erroneously informed her that the Loan was an adjustable-rate mortgage ("ARM") and that she had a past due amount on the Loan. ECF No. 6-1 at 11. On September 14, 2010, Ms. Mitchell informed Ocwen that: (1) she did not have an ARM; (2) she applied for a conventional 30-year fixed rate loan; and (3) she did not have any amount past due on the Loan. *Id.*

<u>The Order To Docket Foreclosure Proceedings</u>

On August 24, 2015, the substitute trustees under the Fremont Deed of Trust filed an Order to Docket foreclosure under power of sale against the Property in the Circuit Court for Prince George's County, Maryland. *See BSPLLC v. Mitchell*, No. CAEF15-20853 (Prince George's County Cir. Ct. filed on Aug. 24, 2015). On September 25, 2015, Ms. Mitchell filed a motion to stay sale and dismiss the foreclosure proceedings and she challenged the validity of the Freemont Note and Freemont Deed of Trust in those proceedings. ECF No. 6-5 at 5.

Specifically, Ms. Mitchell argued that she stopped the closing on the Property and canceled the adjustable-rate loan, after discovering that the Freemont Note was adjustable, rather than a fixed-rate mortgage. *Id.* at 7-13. Ms. Mitchell also argued that she made strike-through markings and placed a "VOID" mark on the signed documents. *Id.* And so, Ms. Mitchell

3

contended during the foreclosure proceedings that, after she cancelled the adjustable-rate mortgage, she signed a Deed of Trust and Note reflecting a fixed-rate loan with a balance of $444,728.00, at a fixed interest rate of 6.2%, for a term of 360 months.  *Id.*

On September 5, 2019, the circuit court granted Ms. Mitchell's motion to dismiss the Order to Docket and held that the substitute trustees had no right to foreclose, because Ms. Mitchell and Fremont had canceled the adjustable-rate mortgage in lieu of a fixed-rate mortgage. ECF No. 6-5.  After the substitute trustees appealed the decision, the Appellate Court of Maryland (formerly the Court of Special Appeals) affirmed the circuit court's decision on February 26, 2021.  ECF No. 6-8.[2]

USB's Allegations

In the complaint, USB alleges that, "[a]t the time that USB, as trustee acquired the Loan, the Fremont Note, and the Fremont [Deed of Trust], it had no knowledge of Ms. Mitchell's allegations in the Order to Docket . . . , including  . . . no knowledge or notice that the adjustable-rate mortgage might have been canceled or modified, or that the Fremont Note and Fremont [Deed of Trust] might have been canceled or might otherwise be invalid."  ECF No. 1 at ¶ 35.  But USB also alleges that "[a]fter learning of Ms. Mitchell's allegations in the Order to Docket, USB, as trustee performed an extensive review and analysis of the Loan servicing records and determined the allegations were meritless."  *Id.* at ¶ 38.

USB also alleges that Ms. Mitchell "concede[d] that she signed a conventional fixed-rate 30-year mortgage to purchase the [P]roperty" in prior litigation before this Court.  ECF No. 1 at ¶ 32.  And so, USB seeks to establish and enforce its rights to a first-priority lien on the Property, based upon this fixed-rate mortgage loan.  *See generally*, ECF No. 1.

**B.      Procedural Background**

Plaintiff commenced this action on February 4, 2022.  *See generally* ECF. No. 1.  Ms. Mitchell moved to dismiss this matter for failure to state a claim on March 7, 2022.  *See* ECF No. 6.

---

[2] The Appellate Court of Maryland observed in the decision that the plaintiffs in that action "did not assert their entitlement to an equitable mortgage when they filed their order to docket or allege any entitlement to an equitable mortgage in any pleading or assert any such claim at any point during the *nine-day evidentiary hearing, which covered two years*."  ECF No. 6-1,  Ex. 7 at 49 (emphasis in original.)

Plaintiff filed response in opposition to Ms. Mitchell's motion to dismiss on March 25, 2022.  ECF No. 9.  Ms. Mitchell filed a reply in support of her motion to dismiss on April 15, 2022.  ECF No. 15.

The motion to dismiss having been fully briefed, the Court resolves the pending motion.

## III.    LEGAL STANDARDS

### A.    Fed. R. Civ. P. 12(b)(6)

To survive a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), a complaint must allege enough facts to state a plausible claim for relief.  *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombley*, 550 U.S. 544, 570 (2007)).  A claim is plausible when "the plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citing *Twombley*, 550 U.S. at 556).  When evaluating the sufficiency of a plaintiff's claims under Fed. R. Civ. P. 12(b)(6), the Court accepts factual allegations in the complaint as true and construes them in the light most favorable to the plaintiff.  *Nemet Chevrolet, Inc. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009); *Lambeth v. Bd. of Comm'rs of Davidson Cty.*, 407 F.3d 266, 268 (4th Cir. 2005) (citations omitted).  But, the complaint must contain more than "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement."  *Nemet Chevrolet*, 591 F.3d at 255.  And so, the Court should grant a motion to dismiss for failure to state a claim if "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations."  *GE Inv. Private Placement Partners II, L.P. v. Parker,* 247 F.3d 543, 548 (4th Cir. 2001) (quoting *H.J. Inc. v. Nw. Bell Tel. Co.,* 492 U.S. 229, 249-50 (1989)).

### B.    The Maryland Statute Of Limitations

Under Maryland law, "[a] civil action at law shall be filed within three years from the date it accrues unless another provision of the [Maryland] Code provides a different period of time within which an action shall be commenced."  Md. Code Ann., Cts. & Jud. Proc. § 5-101. The State of Maryland has also adopted the discovery rule for determining when a cause of action accrues.  *Hahn v. Claybrook*, 100 A. 83, 86 (Md. 1917).  This rule tolls "the accrual of the limitations period until the time the plaintiff discovers, or through the exercise of due diligence, should have discovered, the injury."  *Frederick Rd. Ltd. P'ship v. Brown & Sturm*, 756 A.2d 963, 973 (Md. 2000).  And so, "[a] cause of action 'accrues' when the plaintiff either had actual

knowledge of the wrong or an 'awareness implied from a knowledge of circumstances which ought to have put a person of ordinary prudence on inquiry' of the wrong." *Storey v. Columbia Home Loans, LLC*, RDB-11-3214, 2012 U.S. Dist. LEXIS 72175, 2012 WL 1957978, at *6 (D. Md. May 23, 2012).[3]

### C.    Laches

Lastly, the doctrine of laches applies when there is an unreasonable delay in the assertion of a party's rights in equity and that delay results in prejudice to the opposing party. *See State Ctr., LLC v. Lexington Charles Ltd. P'ship,* 92 A.3d 400, 480 (2014); *see also Liddy v. Lamone,* 919 A.2d 1276, 1283 (2007) (explaining that it is "well settled [in Maryland] that laches applies when there is an unreasonable delay in the assertion of one's rights and that delay results in prejudice to the opposing party") (quotations and citations removed). The Supreme Court of Maryland (formerly the Court of Appeals) has held that, "if the remedy sought in equity is analogous to a remedy cognizable at law, and the statute of limitations prescribes a time within which the legal action must be instituted, equity will follow the law and bar the action." *Grandberg v. Bernard*, 42 A.2d 118, 119 (1945). The rationale for this rule is that, otherwise, "a litigant could circumvent the statute by by-passing the law courts and bring his case in equity." *Id.*

The Supreme Court of Maryland has also recognized that whether laches applies depends on an evaluation of each case's particular circumstances. *See State Ctr.*, 92 A.3d at 483. And so, for the purpose of determining whether laches applies, "prejudice is generally held to be anything that places the [opposing party] in a less favorable position." *State Ctr*, 92 A.3d at 481 (quotations removed).

The Supreme Court of Maryland has also applied the general three-year statute of limitations as a guideline in an action in equity filed where no special statute of limitations applies. *Schaeffer v. Anne Arundel County*, 656 A.2d 751, 755 (1995) (finding extreme

---

[3] This Court has held that "knowledge of facts, not knowledge of their legal significance, determines when the statute of limitations begins to run." *Willis v. Bank of Am. Corp.,* ELH-13-02615, 2014 U.S. Dist. LEXIS 105339, 2014 WL 3829520, at *12 (D. Md. Aug. 1, 2014). And so, "[t]his standard . . . does not require actual knowledge on the part of the plaintiff, but must be satisfied if the plaintiff is on 'inquiry notice.'" *Dual Inc. v. Lockheed Martin Corp.,* 383 Md. 151, 167-68, 857 A.2d 1095, 1104 (2004).

prejudice resulting from the delay after the statute of limitations period had run); *see also Desser v. Woods*, 266 Md. 696, 704 (1972) (explaining that if there is an action at law analogous to the case before it, a court of equity will apply the statute of limitations applicable to that analogous legal action); *Rettaliata v. Sullivan*, 208 Md. 617, 621 (1956) (same);.  And so, Maryland courts have held that, if an analogous legal action would have been barred, the equity action can also be barred by the mere lapse of time, using the statutes of limitations as a valid guide.  *See Daughtry v Nadel*, 248 Md. App. 594, 627 (2020); *see also Boucher v. Shomber*, 65 Md. App. 470, 481 (1985) ("It is well settled that an equity court will apply the equitable doctrine of laches in a manner consistent with an analogous statute of limitations at law.")

## IV. LEGAL ANALYSIS

Ms. Mitchell has moved to dismiss the complaint for the following 6 reasons: (1) USB's claims are time-barred under either Maryland's three-year statute of limitations, or the doctrine of laches; (2) USB's claims are barred by the doctrine of *res judicata*, because the circuit court's decision in the Order to Docket proceedings precludes these claims and USB's claims are compulsory counterclaims that should have been raised in the Order to Docket proceedings; (3) USB's claims are also barred by collateral estoppel, because, among other things, USB unsuccessfully requested the same equitable relief during the Order to Docket proceedings; (4) USB lacks standing, because any injury to USB was caused by Fremont rather than by Ms. Mitchell; (5) USB's claims are bared by the statute of frauds, because USB fails to identify an executory contract granting an interest in the Property; and (6) USB fails to state plausible claims for declaration of an equitable lien, unjust enrichment, equitable subrogation, and specific performance in the complaint.  *See generally*, ECF No. 6.

USB counters that: (1) its claims are timely, because they arose no earlier than September 9, 2019, when Ms. Mitchell allegedly refused to secure USB with a first-priority lien against the Property; (2) its claims are not barred by the doctrine of *res judicata*, because the substitute trustees could not have brought these claims in the Order to Docket proceedings and the claims are not compulsory counterclaims; (3) the statute of frauds does not apply to its claims, because, among other things, the complaint alleges facts to show that Ms. Mitchell signed a written agreement to satisfy Maryland's statute of frauds; (4) it has standing, because USB acquired rights to the Loan advanced by Freemont; and (5) it states plausible claims for declaration of

equitable lien, specific performance, equitable subrogation, and unjust enrichment in the complaint. *See, generally*, ECF No. 9. And so, USB requests that the Court deny Ms. Mitchell's motion to dismiss. *Id.* at 35

For the reasons that follow, USB's claims for reformation, declaratory judgment, declaration of equitable lien, equitable subrogation, and unjust enrichment are time-barred under either Maryland's three-year statute of limitations or the doctrine of laches. But USB's claim for specific performance is timely and USB states a plausible claim for specific performance in the complaint. And so, the Court GRANTS-in-PART and DENIES-in-PART Ms. Mitchell's motion to dismiss and DISMISSES Counts I, II, III, V and VI of the complaint.

### A.    USB's Equitable And Unjust Enrichment Claims Are Untimely

As an initial matter, Ms. Mitchell persuasively argues that USB's claims for reformation, declaratory judgment, declaration of equitable lien, equitable subrogation and unjust enrichment are time-barred under either Maryland's statute of limitations, or the doctrine of laches.

Under Maryland law, "[a] civil action at law shall be filed within three years from the date it accrues unless another provision of the [Maryland] Code provides a different period of time within which an action shall be commenced." Md. Code Ann., Cts. & Jud. Proc. § 5-101. The State of Maryland has also adopted the discovery rule for determining when a cause of action accrues. *Hahn v. Claybrook*, 100 A. 83, 86 (Md. 1917). This rule tolls "the accrual of the limitations period until the time the plaintiff discovers, or through the exercise of due diligence, should have discovered, the injury." *Frederick Rd. Ltd. P'ship v. Brown & Sturm*, 756 A.2d 963, 973 (Md. 2000). And so, under Maryland law, "[a] cause of action 'accrues' when the plaintiff either had actual knowledge of the wrong or an 'awareness implied from a knowledge of circumstances which ought to have put a person of ordinary prudence on inquiry' of the wrong." *Storey v. Columbia Home Loans, LLC*, RDB-11-3214, 2012 U.S. Dist. LEXIS 72175, 2012 WL 1957978, at *6 (D. Md. May 23, 2012) (citations omitted).

Maryland courts have also recognized that the doctrine of laches applies when there is an "unreasonable delay" in the assertion of a party's rights in equity and that delay results in prejudice to the opposing party. *See State Ctr.,* 92 A.3d at 480. Notably, the Supreme Court of Maryland has held that, "if the remedy sought in equity is analogous to a remedy cognizable at law, and the statute of limitations prescribes a time within which the legal action must be

8

instituted, equity will follow the law and bar the action." *Grandberg v. Bernard*, 42 A.2d at 119. And so, the Supreme Court of Maryland has applied the general three-year statute of limitations as a guideline in its fact-specific inquiry of actions filed after the three-year limitations period had run. *See e.g., Schaeffer v. Anne Arundel County*, 656 A.2d at 755 (finding extreme prejudice resulting from the delay after the statute of limitations period had run).

The Court agrees with Ms. Mitchell that USB's claims for reformation, declaratory judgment, declaration of equitable lien, equitable subrogation, and unjust enrichment accrued no later than in 2015, when USB acknowledges that it became aware of Ms. Mitchell's allegation during the Order to Docket proceedings that she canceled the adjustable-rate mortgage loan for the Property. A careful reading of the complaint makes clear that USB's reformation, declaratory judgment, and declaration of equitable lien claims are based upon Ms. Michell's allegation, as stated in 2015 during the Order of Docket proceedings, that she cancelled the adjustable-rate mortgage for the Property and instead signed a Deed of Trust and Note reflecting a fixed-rate mortgage loan. ECF No. 1 at ¶ 43; 48 (alleging that Ms. Mitchell admits she and Freemont intended for the Freemont Note and Freemont Deed of Trust to state an original principal balance of $444,728.00, with an annual fixed interest rate of 6.2%); *Id*. at ¶ 54 (alleging that Ms. Mitchell intended that the Loan would be secured by fixed-rate mortgage).

USB's unjust enrichment claim, which USB acknowledges is subject to Maryland's three-year statute of limitations, goes back even further in time. A careful reading of the complaint shows that this claim is based upon the alleged benefit conferred on Ms. Mitchell *via* the Loan proceeds to live in the Property since 2005. *Id*. at ¶ 75 (alleging that Ms. Mitchell was aware of the benefit conferred to her by Freemont *via* the Loan proceeds because she has lived in the Property for over sixteen years). USB's equitable subrogation claim is similarly based upon events that occurred when Ms. Mitchell purchased the Property in 2005. *Id*. at ¶¶ 78 and 79 (alleging that, at time of closing in 2005, Freemont advanced funds to discharge two prior encumbrances on the Property in the amount of $314,618.65 in reliance upon obtaining a first-priority lien).

USB does not dispute that it was aware of Ms. Mitchell's allegation about her mortgage loan in 2015. ECF No. 9. But USB, nonetheless, argues that its claims are timely, because they are based upon Ms. Mitchell's refusal to grant USB a first-priority lien on the Property after the

adjustable-rate mortgage loan was invalidated by the circuit court. *Id*. at 19-20. As discussed above, USB's argument is belied by the factual allegations set forth in Counts I, II, III, V and VI of the complaint showing that these claims accrued when Ms. Mitchel made the allegation about the Loan in the Order to Docket proceedings. And so, the Court agrees with Ms. Mitchell that USB's claims for claims for reformation, declaratory judgment, declaration of equitable lien, equitable subrogation, and unjust enrichment accrued no later than, on September 25, 2015, when Ms. Mitchell filed her motion to dismiss the Order to Docket proceedings. *See Pennwalt Corp. v. Nasios*, 550 A.2d 1155, 1163 (Md. 1988) (explaining that the limitations period for a civil action begins to run when the plaintiff knows of circumstances which would cause a reasonable person in the plaintiff's position to investigate with reasonable diligence and such investigation would have led to the discovery of the claim). And so, USB brings this matter more than three years after Ms. Mitchell made her allegation in the Order to Docket proceedings.

Ms. Mitchell has also shown that there has been an "unreasonable delay" in the assertion of USB's equitable claims in this case and that this delay would result in prejudice to her if USB were permitted to pursue these claims. As Ms. Mitchell correctly observes, USB brings these claims almost seven years after discovering her allegation about the invalidity of the Loan, and 18 years after she purchased the Property. USB provides no explanation for this delay. ECF No. 6-1 at 15.

Ms. Mitchell also persuasively argues that she would be prejudiced if required to defend against these claims. USB's claims are based upon events that occurred almost 18 years ago. The original lender for the Loan, Freemont, no longer exists and Freemont's business records have apparently been destroyed. ECF No. 6-1 at 18. Given this, it would be difficult for Ms. Mitchell to locate documents and witnesses knowledgeable about events that occurred when she purchased the Property in 2005. *Id*. at 18-19.

USB's argument these claims accrued no sooner that September 9, 2019, when the circuit court granted Ms. Mitchell's motion to dismiss, is also not convincing. USB correctly observes that the circuit court held in that decision that the substitute trustees had no right to foreclose on the Property, because Ms. Mitchell and Fremont had canceled the adjustable-rate mortgage in lieu of a fixed-rate mortgage. ECF No. 9 at 21. But, USB does not dispute that it had already been aware for several years that Ms. Mitchell believed she canceled the adjustable-rate loan in

lieu of a fixed-rate loan when the circuit court issued this decision.[4]  *See generally*, ECF Nos. 1 and 9.

Because USB brings the aforementioned claims at least six years, and in some cases more than a decade, after they accrued, its claims for reformation, declaratory judgment, declaration of equitable lien, equitable subrogation, and unjust enrichment are time-barred. *See Schaeffer v. Anne Arundel County*, 338 Md. 75, 83, 656 A.2d 751 (1995) (finding extreme prejudice resulting from the delay after the statute of limitations period had run).  And so, the Court must DISMISS Counts I, II, III, V and VI of the complaint.

**B.      USB States A Plausible Claim For Specific Performance**

Ms. Mitchell's argument that the Court should dismiss USB's remaining claim for specific performance, in Count IV of the complaint, is on less sure footing.  USB persuasively argues that this claim is timely, because it accrued no sooner that September 9, 2019.  ECF No. 1 at 13-14.

In Count IV of the complaint, USB alleges that, "[u]pon entry of the circuit court's order on September 9, 2019 invalidating the recorded Freemont [Deed of Trust], Ms. Mitchell has breached [the Compliance Agreement] by, among other things, failing and refusing to execute a replacement Deed of Trust and Note to secure Freemont's first-priority lien against the Property." *Id.* at ¶ 69.  And so, USB seeks specific performance of the obligation to execute a replacement deed of trust to secure the lien against the Property in Count IV of the complaint. *Id*.

The complaint makes clear that USB's specific performance claim is based upon Ms. Mitchell's alleged breach of a Compliance Agreement on September 9, 2019.  *Id*. at ¶ 69.  Because USB commenced this matter on February 4, 2022, which is within three years of that

---

[4] USB argues that its unjust enrichment claim is timely, because the statute of limitations for that was tolled by Ms. Mitchell's acknowledgment of her debt to Freemont during the Order of Docket proceedings.  ECF No. 9 at 29.  But the Court reads the complaint to allege that Freemont conferred a benefit on Ms. Mitchell when she purchased the Property using the Loan proceeds in 2005.  ECF No. 1 at ¶ 74.  It is undisputed that Ms. Mitchell stopped making payments on the Loan in 2010, and that she maintained that the Loan was invalid at that time, while continuing to remain in the Property for several years thereafter.  Given this, it would appear that USB's unjust enrichment claim accrued in 2010, well before the Order of Docket foreclosure proceedings.

date, this claim is timely under Maryland law.  Ms. Mitchell has also not convincingly argued that she would be prejudiced by allowing USB to pursue its specific performance claim.  Given this, the Court does not agree that the doctrine of laches bars this claim.

The Court has considered Ms. Mitchell's remaining arguments for dismissing this claim and finds the arguments to be unpersuasive.  *See, generally*, ECF No. 6-1 (arguing that USB's claims are barred by the doctrine of *res judicata* and collateral estoppel; USB lacks standing; USB's claims are barred by the statute of frauds; and USB fails to state plausible claims for relief).  And so, the Court declines to dismiss USB's claim for specific performance.[5]

## V.      CONCLUSION

In sum, USB's claims for reformation, declaratory judgment, declaration of equitable lien, equitable subrogation, and unjust enrichment are time-barred under either Maryland's three-year statute of limitations, or the doctrine of laches.  But USB's claim for specific performance is timely and USB states a plausible claim for specific performance in the complaint.

And so, for the foregoing reasons, the Court:

1.      **GRANTS-in-PART and DENIES-in-PART** Defendant's motion to dismiss; and

2.      **DISMISSES** Counts I, II, III, V and VI of the complaint.

Defendant shall **ANSWER**, or otherwise respond to, the remaining Count in the complaint **on or before April 13, 2023.**

Judgment is entered accordingly.

Each party to bear its own costs.

---

[5] The Court observes that, taken as true, the allegations in the complaint make clear that USB's specific performance claim is based upon Ms. Mitchell's alleged 2019 breach of an agreement to execute a replacement deed of trust.  Given this, the claim could not have been brought during the Order to Docket foreclosure proceedings.  The complaint also makes clear that USB sufficiently alleges facts to show that Ms. Mitchell breached a written agreement to execute a replacement deed of trust and that USB was harmed by this alleged breach.  ECF No. 1 at ¶¶ 67-68; 70-17.

**IT IS SO ORDERED.**

s/Lydia Kay Griggsby
LYDIA KAY GRIGGSBY
United States District Judge